

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| LORRAINE D. BROWN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>AMERICAN AIRLINES, INC., and DOES 1-100, inclusive,<br><br>                    Defendant. | CASE NO. CV 10-8431 AG (PJWx)<br><br>ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING MOTION FOR SUMMARY ADJUDICATION, AND DENYING MOTION FOR CLASS CERTIFICATION |

In this putative class action primarily alleging California Labor Code violations, the parties now file several motions.  Defendant American Airlines, Inc. ("Defendant" or "AA") has filed a Motion for Judgment on the Pleadings ("Motion for Judgment on the Pleadings") and a Motion for Summary Adjudication ("Motion for Summary Adjudication").  Plaintiff Lorraine Brown ("Plaintiff") has filed a Motion for Class Certification ("Motion for Class Certification").  Plaintiff alleges four claims against Defendant on behalf of herself and a putative class.  The

Motion for Judgment on the Pleadings addresses the First, Second, and Third Claims.  The Motion for Summary Adjudication addresses the Fourth Claim.  Plaintiff seeks certification of a class of certain California employees of Defendant.

After reviewing all papers and arguments submitted, the Court DENIES the Motion for Judgment on the Pleadings, DENIES the Motion for Summary Adjudication, and DENIES the Motion for Class Certification.

**BACKGROUND**

Plaintiff is currently employed as an Airport Operations Agent for Defendant at LAX Airport.  She brings this case on behalf of herself and other "Airport Agents," which includes employees commonly referred to as reservation agents, ticket agents, gate agents, customer service agents, baggage service agents, passenger service agents, operations planning agents, and cargo agents.  (Motion at 1:4-10.)

In this action, Plaintiff alleges four claims, numbered as follows: (1) failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194; (2) failure to provide accurate itemized wage statements in violation of California Labor Code § 226 and Industrial Welfare Commission Order 9; (3) violations of the California Business and Professions Code § 17200 et seq. ("UCL"); and (4) civil penalties under § 2698 et seq. of the California Labor Code.  Plaintiff's first claim includes overtime pay based on "shift trades" or "shift changes" and for failure to include bonus wages.  Shift changes occur when an employee either trades or picks up a scheduled shift of another employee.  Generally, under the California Labor Code, Defendant must pay overtime to any employee who works more than 8 hours in a workday or 40 hours in a workweek.  But these requirements

> shall not apply where any employee of an airline certified by the federal or state government works over 40 hours but not more than 60 hours in a workweek due to a temporary modification in the employee's normal work schedule not required by the employer but arranged at the request of the employee, including but not limited to situations where the employee requests a change in days off or trades days off with another employee.

California IWC Wage Order 9 § 3(N) ("Section 3(N")).  Plaintiff argues that Section 3(N) is in violation of Labor Code § 510 and that Defendant's overtime policy is therefore unlawful.

This case is not the first time a plaintiff – represented by counsel for Plaintiff here – has filed similar claims against Defendant and sought class certification.  In *Askey v. American Airlines, Inc.*, CV 06-2042 AG (PJWx), plaintiff Lucy Askey filed a putative class action in state court asserting an overtime claim and an inaccurate wage statement claim, among other claims.  *Askey* was then removed to this Court.  *Askey* never reached the class certification stage, as plaintiff voluntarily dismissed her complaint without prejudice in August 2007.  In *Martin v. American Airlines*, CV 07-4812 AG (PJWx), plaintiff Deborah Martin filed another putative class action, again asserting an overtime claim and an inaccurate wage statement claim, among others.  The claims were broader than the claims asserted here.  In July 2009, this Court denied class certification in *Martin*, in part on the basis that plaintiff failed to show that common questions predominated as required by Rule 23(b)(3).  Defendant now argues that this denial of class certification in Martin should have collateral estoppel effect on Plaintiff's Motion for Class Certification.

## ANALYSIS

As noted, there are three motions currently before the Court.  Defendant filed a Motion for Judgment on the Pleadings for three out of Plaintiff's four claims, and Defendant filed a Motion for Summary Adjudication on the remaining claim.  Plaintiff filed a Motion for Class Certification for certification of the First, Second, and Third Claims.  The Court begins with the Motion for Judgment on the Pleadings.

## 1.    MOTION FOR JUDGMENT ON THE PLEADINGS

As noted, Defendant moves for judgment on the pleadings on the First, Second, and Third Claims.  Defendant makes two arguments to support this motion.  First, Defendant argues that

Plaintiff's Third Claim, for violation of the UCL, can't be premised on violations of California Labor Code § 204, 226, 226.7, 1174, and 1198, because a UCL claim can only seek restitution or injunctive relief, not damages.  Second, Defendant argues that Plaintiff's *class claims* in the First, Second, and Third Claims are barred by collateral estoppel due to the ruling denying class certification in *Martin v. American Airlines, Inc*., CV 07-4812 AG (PJWx).  Defendant does not seek judgment on the pleadings for the Fourth Claim, nor does it seek judgment on the pleadings for Plaintiff's individual claims in the First or Second Claims.

## 1.1    Legal Standard

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Rules 12(b)(6) and 12(c) are substantively identical.  *See* William W. Schwartzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:319.  For a 12(c) motion, the Court accepts the allegations of the non-moving party as true.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir 1984).  If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings.  *Id.*  "While 12(c) of the Federal Rules of Civil Procedure does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure; it is common to apply Rule 12(c) to individual causes of action."  *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005); *Moran v. Peralta Community College Dist.*, 825 F.Supp. 891, 893 (N.D. Cal. 1993); Schwarzer et al., § 9:340 (1997) (common practice to permit "partial judgment on the pleadings")).

## 1.2    Preliminary Matter

Defendant submits multiple requests for judicial notice to support the Motion for Judgment on the Pleadings.  Under Federal Rule of Evidence 201, "[a] judicially noticed fact

must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).  The Court finds that the documents submitted are appropriate for judicial notice.

### 1.3   Analysis of Motion for Judgment on the Pleadings

As noted, Defendant raises two arguments in favor of its Motion for Judgment on the Pleadings.  The Court begins with Defendant's argument against the UCL claim, then turns to Defendant's collateral estoppel arguments.

#### 1.3.1   Whether the UCL Claim Can Be Premised on the Alleged Labor Code Sections

Plaintiff alleges that Defendant's "practices are illegal and violate Labor Code section 204, 226, 226.7, 510, 512, 1174, 1194, and 1198.  Furthermore, Defendant AA's policies and procedures constitute unfair business practices and/or unfair competition, and they provide Defendant AA with an unfair advantage over Defendant AA's competitors." (Second Amended Complaint ("SAC") ¶ 56.)  As a remedy for the UCL claim, Plaintiff seeks restitution, injunctive, and declaratory relief.  (*Id.* ¶ 59.)

In *Cortez v. Purolator Air Filtration Prods., Co.*, 23 Cal. 4th 163, 172 (2000), the California Supreme Court held that a court may only order restitution, not money damages, as a remedy for a UCL claim.  Likewise, penalties under the Labor Code are not recoverable through a UCL claim.  *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010).

1   But the *Cortez* court also concluded that compelling a defendant to pay back wages would

2   be a restitutionary remedy and thus would be proper under the UCL and § 17203.  *Id.* at 176.

3   Courts have distinguished between back wages, which were earned, and penalties, which would

4   be awarded only afterwards by a court.  *See Pineda*, 50 Cal. 4th at 1402 ("The vested interest in

5   unpaid wages . . . arises out of the employees' action, i.e., their labor.  Until awarded by a

6   relevant body, employees have no comparable vested interest in section 203 penalties.").

7   The *Cortez* and *Pineda* courts rejected the argument that monetary recovery necessarily

8   means damages rather than restitution.  "The concept of restoration or restitution, as used in the

9   UCL, is not limited only to the return of money or property that was once in the possession of

10  that person."  *Cortez*, 23 Cal. 4th at 178.  Rather, UCL restitution includes "earned wages that

11  are due and payable pursuant to section 200 et seq. of the Labor Code[, which] are as much the

12  property of the employee who has given his or her labor to the employer in exchange for that

13  property as is property a person surrenders through an unfair business practice."  *Id.*

14  Here, Plaintiffs seek an award of back pay under the Labor Code, which, according to the

15  reasoning of *Cortez* and *Pineda*, should be categorized as restitution rather than damages.  As

16  restitution, the back pay is available under the UCL and Defendant's first argument supporting

17  its Motion for Judgment on the Pleadings fails.

18

19        1.3.2   Whether the First, Second, and Third Claims Are Collaterally Estopped

20

21  Defendant also argues that the class allegations of the First, Second, and Third Claims are

22  collaterally estopped by this Court's ruling in *Martin v. American Airlines*, Case No. 07-4812

23  AG (PJWx).  In *Martin*, the Court denied class certification, and Defendant argues that

24  Plaintiff's class claims are barred by that ruling.  The first issue is whether to apply California

25  law or federal common law.  Plaintiff argues that the Court should follow federal common law,

26  based on *Smith v. Bayer Corp.*, 131 S.Ct. 2368 (2011).  Defendant argues that California law

27  applies, based on *Alvarez v. May Dept. Stores, Co.*, 143 Cal. App. 4th 1223 (2006).

28

In *Smith*, the Supreme Court noted that "[w]e have held that federal common law governs the preclusive effect of a decision of a federal court sitting in diversity." *Smith*, 131 S.Ct. at 2376, n.6. Since this case was removed under CAFA jurisdiction, this Court is sitting in diversity. Applying *Smith*, this Court determines that federal common law should apply. In any case, broadly speaking, the principles of preclusion are consistent between California and federal law, which the Supreme Court also considered in *Smith* regarding the relevant state law. The standard for collateral estoppel under federal law, as set forth in *Smith*:

> For the federal court's determination of the class issue to have this preclusive effect, at least two conditions must be met. First, the issue the federal court decided must be the same as the one presented in the state tribunal. *See* 18 Wright & Miller § 4417, at 412. And second, Smith must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties.

*Smith*, 131 S.Ct. at 2376.

California law sets forth the principles slightly differently, but with the same general thrust. As set forth in *Alvarez*:

> In order to apply this principle [of collateral estoppel]: (1) the issue must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision must have been final and on the merits; and (5) preclusion must be sought against a person who was a party or in privity with a party to the prior proceeding.

*Alvarez*, 143 Cal. App. 4th at 1233.

Although the Court determines that federal common law applies, the Court nonetheless looks at Defendant's argument about California state law before analyzing collateral estoppel here. Defendant clings to the ruling of *Alvarez* because of how that case interprets "in privity," one of the key factors in both the California and federal analysis. In *Alvarez*, the court concluded that a putative member of a non-certified class could be bound by a decision denying class certification. *Id*. at 1238. This analysis depended on the *Alvarez* court's interpretation of "fairness" of binding a non-party to a prior decision. *Id*. at 1237. The court found that "due process is satisfied when an absent class member's interest is adequately represented." *Id*. at 1239. In *Alvarez*, the court found that it would be fair to bind a non-party to an earlier ruling.

In contrast, *Smith* concluded that when a plaintiff fails to obtain class certification, that ruling does not have collateral estoppel effect on the putative class members. "[I]n the absence of a certification under that Rule [23], the precondition for binding Smith was not met. Neither a proposed class action nor a rejected class action may bind nonparties." *Smith*, 131 S.Ct. at 2380. The Supreme Court expressed reservations about allowing repeated attempts to certify the same class through simply changing the lead plaintiff's name, but concluded that this policy argument "flies in the face of the rule against nonparty preclusion." *Id*. at 2381.

This Court finds the reasoning of *Smith* persuasive and the reasoning of *Alvarez* problematic. Both federal common law and California collateral estoppel law stand for the principle that, except for limited exceptions, a non-party cannot be collaterally estopped by a prior ruling. In *Alvarez*, it appears that the California appellate court grew tired of repeated bites at the class certification apple and decided that it would expand the scope of privity to include non-parties. This Court is uncomfortable with such a broad interpretation of privity, and the Court is concerned by the significant due process issues that *Alvarez* glosses over.

Here, Plaintiff was not a party to the *Martin* litigation. While Plaintiff would have been a class member if the class had been certified, the motion for class certification was denied, so Plaintiff never became a part of that litigation. As set forth in *Smith*, one of the requirements for collateral estoppel is that Plaintiff must have been a party to *Martin* (or fallen into an exception). But Plaintiff was neither a party nor subject to one of the exceptions, so collateral estoppel does not apply. The Court need not address the second requirement for collateral estoppel, namely the identity of issues.

### 1.4    Conclusion

The Court DENIES the Motion for Judgment on the Pleadings. Defendant's argument against the UCL claim fails, and Defendant's collateral estoppel argument fails as well.

## 2.    MOTION FOR SUMMARY ADJUDICATION

Defendant moves for summary adjudication on Plaintiff's Fourth Claim, for civil penalties under California Labor Code §§ 2698 et seq., also called the Private Attorney General Act ("PAGA").  Defendant argues that PAGA is unconstitutional under the California state constitution's requirement of separation of powers and that Plaintiff's Fourth Claim thus fails.

### 2.1    Legal Standard

Summary judgment or summary adjudication is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id*. at 322-23.  If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

The moving party's burden may also be met by showing that there is an absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  Once the moving party has met its initial burden, Rule 56

1    requires the nonmoving party to go beyond the pleadings and identify facts which show a

2    genuine issue for trial.

3

4    **2.2    Preliminary Matter**

5

6         Defendant submitted objections to the Declaration of Jan Raymond, submitted in

7    opposition to the Motion for Summary Adjudication.  The Court has reviewed the objections and

8    relies only on admissible evidence. *See F.T.C. v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1118 n.5

9    (S.D. Cal. 2008) ("The parties have each filed evidentiary objections.  However, in deciding the

10   present motions, the Court has only relied upon admissible evidence."); *Schroeder v. San Diego*

11   *Unified School Dist.*, Case No. 07-cv-1266-IEG (RBB), 2009 WL 1357414, at *2, n.1 (S.D. Cal.

12   May 13, 2009); *see also, Doe v. Starbucks, Inc.*, Case No. SACV 08- 0582 AG (CWx), 2009

13   WL 5183773, at *1 (C.D.Cal. Dec. 18, 2009).

14

15   **2.3    Analysis of Motion for Summary Adjudication**

16

17        Defendant argues that PAGA is unconstitutional because it "fails to provide the executive

18   with sufficient ongoing control of the litigation sufficient to comply with the separation of

19   powers doctrine."  (MSA Motion at 1:24-25.)  Defendant contends that, under PAGA, private

20   citizens are "deputized" to enforce the Labor Code but the government lacks the means to

21   "monitor, participate in, control, or oversee the litigation."  (*Id.* at 4:1.)  But Defendant cites no

22   cases where a court has found that PAGA is unconstitutional or even addressed that issue.

23        Plaintiff argues that PAGA is constitutional.  Plaintiff contends that the case of *Currie-*

24   *White v. Blockbuster, Inc.*, No. C-09-2593 MMC, 2009 WL 2413451 (N.D. Cal. Aug. 5, 2009),

25   fully supports her position.  In *Currie-White*, the court held that "PAGA does not violate the

26   separation of powers principle under the California Constitution by impermissibly delegating

27   prosecutorial authority to individuals outside the executive branch."  *Id.* at *2.  The court

28   reasoned that a claim under PAGA is nonetheless brought by an employee, not on behalf of the

state, even if the employee is a proxy for the state.  *Id.*  Further, the court concluded that it "is not persuaded . . . that the California Supreme Court would find the provisions of PAGA fail to accord the Executive Branch sufficient control over the conduct of PAGA actions . . . ."  *Id.* (internal quotations omitted).

This Court is convinced by the reasoning of *Currie-White* and influenced by the fact that Defendant has cited no California case addressing the constitutionality of PAGA.  Even in *Arias v. Sup. Ct.*, 46 Cal. 4th 969 (2009), which discussed the due process implications of PAGA and thus touched on its constitutionality, the court did not consider whether PAGA violated the separation of powers.  Defendant's arguments about the unconstitutionality of PAGA are insufficient for this Court to rule in its favor.

The Court DENIES the Motion for Summary Adjudication.

## 3.    MOTION FOR CLASS CERTIFICATION

Plaintiff seeks class certification of her First, Second, and Third Claims.  Preliminarily, the Court notes that Plaintiff's Fourth Claim is under PAGA, which the Court discussed in Section 2.  A PAGA claim can be prosecuted as a representative action without certification, so this claim is not subject to the Motion for Class Certification.  *See Arias v. Sup. Ct.*, 46 Cal. 4th 969 (2009) (holding that an individual may pursue a representative claim for penalties under PAGA without satisfying statutory class action requirements).  The Court also notes that in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), the Supreme Court overruled the 9th Circuit's prior ruling in *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), upon which Plaintiff relied in part in her Motion for Class Certification.

Plaintiff proposes the following class definition:

> All California-based, hourly, non-union Airport Agents (Airport Agents include "Reservation Agents," "Ticket Agents," "Gate Agents," "Customer Service Agents," "Baggage Service Agents," "Passenger Service Agents," "Operations Planning Agents," and "Cargo Agents") who have worked for Defendant American Airlines, Inc. ("AA") in California while employed at any time

1   between the date that is four years prior to the date of the filing of
2   the Complaint through the present.

3   **3.1   Legal Standard**

4

5   The party seeking certification has the burden of providing facts sufficient to satisfy the

6   Rule 23(a) and (b) requirements.  *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th

7   Cir. 1977).  A district court should certify a class only if the court "is satisfied, after a rigorous

8   analysis," that the Rule 23 prerequisites have been met.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

9   147, 161 (1982).  If the court is not satisfied, then certification should be refused.  *Id.*

10   "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's

11   underlying claim. That cannot be helped."  *Dukes*, 131 S.Ct. at 2551.  Rule 23 requires more

12   than simply pleading sufficient facts.  "A party seeking class certification must affirmatively

13   demonstrate his compliance with the Rule."  *Id.*

14   Under Rule 23(a), one or more members of a class may sue or be sued as representative

15   parties on behalf of all members only if:

16       (1)   the class is so numerous that joinder of all members is
                impracticable;
17       (2)   there are questions of law or fact common to the class;
         (3)   the claims or defenses of the representative parties are typical
18              of the claims or defenses of the class; and
         (4)   the representative parties will fairly and adequately protect the
19              interests of the class.

20

21   A class action may only be maintained if all four subparts of Rule 23(a) are satisfied and

22   if one of the three subparts of Rule 23(b) is satisfied.  Rule 23(b) states that class certification is

23   appropriate if:

24   (1) prosecuting separate actions by or against individual class members would create a
     risk of:
25       (A)   inconsistent or varying adjudications with respect to individual class
                members that would establish incompatible standards of conduct for the
26              party opposing the class;
         (B)   adjudications with respect to individual class members that, as a practical
27              matter, would be dispositive of the interest of the other members not parties

28

to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Here, Plaintiff seeks certification under either Rule 23(b)(2) or Rule 23(b)(3), so the Court will address both of those sections.

### 3.2 Preliminary Matter

The parties each submit requests for judicial notice to support the Motion for Class Certification. The requests submitted by Defendant are 46 in number and approximately four inches in height. Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original). While the Court has reviewed each request, the Court does not list its tedious individual determinations here. Instead, the Court simply states that it will take into account those documents appropriate for notice (and relevant to its determination, which 46 documents submitted by Defendant may not all be).

In addition, the Court has reviewed the objections filed here and relies only on admissible evidence. *See F.T.C. v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1118 n.5 (S.D.Cal. 2008) ("The parties have each filed evidentiary objections. However, in deciding the present motions, the Court has only relied upon admissible evidence."); *Schroeder v. San Diego Unified School Dist.*, No. 07cv1266-IEG (RBB), 2009 WL 1357414, at *2, n.1 (S.D.Cal. May 13, 2009). *See also*,

*Doe v. Starbucks, Inc.*, No. SACV 08-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D.Cal. Dec. 18, 2009).

### 3.3     Rule 23(a) Prerequisites

The Court begins with the four prerequisites of Rule 23(a): numerosity, common questions, typicality, and adequacy.

#### 3.3.1    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The proposed class easily meets this requirement. "Impracticality does not mean 'impossibility,'" but simply that joinder of all class members must be difficult or inconvenient. *Harris v. Palm Spring Alpine Estates, Inc*., 329 F.2d 909, 913 (9th Cir. 1964). Here, the proposed class includes more than 750 people. (Declaration of John Dorigan in support of Motion, Ex. 30.) Defendant does not contest numerosity. The Court finds that Plaintiff has satisfied Rule 23(a)1).

#### 3.3.2    Common Questions

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Rule 23(a)(2) has previously been construed permissively. This rule is "less rigorous" than the companion requirements of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In *Dukes*, however, the Supreme Court recently clarified what Rule 23(a)(2) requires. The "claims must depend on a common contention . . . [and that] common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. An allegation that all putative class

members suffered "a violation of the same provision of law" is not sufficient.  *Id*.  The Supreme

Court determined that plaintiffs in *Dukes* failed to demonstrate any common questions for Rule

23(a)(2) purposes, in part because plaintiffs failed to set forth a company-wide policy of

discrimination.  "Other than the bare existence of delegated discretion, [plaintiffs] have

identified no specific employment practice."  *Id*. at 2555.

Plaintiff here argues that system-wide policies and practices are present here, "including

AA's policy and practice of not paying Agents for any overtime for shift changes, AA's policy

. . . of not including monetary bonuses earned by Agents in the overtime-rate calculation, and

AA's policy and practice of not providing actual pay stubs to Agents."  (Motion for Class

Certification at 11:27-12:2.)  Defendant does not address this issue in opposing the Motion for

Class Certification and thus does not appear to dispute the existence of common questions.  Even

under what the standard as clarified in *Dukes*, Plaintiff's allegations are sufficient to show

common questions.  A common question could be framed as to whether Defendant's overtime

policy is legal.  An answer to this question would apply to all class members.  *See* Richard A.

Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.REV. 97, 132 (2009)

("What matters to class certification . . . is not the raising of common 'questions' – even in

droves – but, rather the capacity of a classwide proceeding to generate common answers apt to

drive the resolution of the litigation.").

Thus, Plaintiff has satisfied Rule 23(a)(2).

### 3.3.3   Typicality

Defendant does not dispute Plaintiff's assertion of typicality.  Rule 23(a)(3) requires that

"the claims or defenses of the representative parties are typical of the claims or defenses of the

class."  Representative claims are typical "if they are reasonably co-extensive with those of

absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Cases "challenging the same unlawful conduct which affects both the named plaintiffs and the

putative class" usually satisfy the typicality requirement, "irrespective of the varying fact

1  patterns underlying the individual claims." *Krell v. Prudential Life Ins. Co. of Am.*, 148 F.3d

2  283, 311 (3d Cir. 1998).  The test of typicality "is whether other members have the same or

3  similar injury, whether the action is based on conduct which is not unique to the named

4  plaintiffs, and whether other class members have been injured by the same course of conduct."

5  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108

6  F.R.D. 279, 282 (C.D.Cal. 1985)).

7       While the proposed class would include Agents of different varieties, Plaintiff's claims

8  and allegations need not be identical to those of other putative class members.  *See Staton v.*

9  *Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (stating that a class action need not provide a

10  class representative for each job category).  The Court finds that Plaintiff has satisfied the

11  typicality requirements of Rule 23(a)(3).

12

13       3.3.4   Adequacy

14

15       On this point, Defendant girds for battle.  Over half of Defendant's Opposition is devoted

16  to this consideration.  Rule 23(a)(4) requires that "the representative parties will fairly and

17  adequately protect the interests of the class."  To determine whether the representation is

18  adequate, "we ask two questions: (1) Do the representative plaintiffs and their counsel have any

19  conflicts of interest with other class members, and (2) will the representative plaintiffs and their

20  counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing, Co.*, 327 F.3d

21  938, 957 (9th Cir. 2003).

22       Defendant argues that Plaintiff has interests antagonistic to those of the putative class.  In

23  particular, Defendant contends that Plaintiff's position on voluntary shift changes counting

24  toward overtime is in conflict with the position of many putative class members.  Defendant

25  posits that shift trades are not permitted if they would result in expenses for Defendant, and

26  overtime is one such type of expense.  Because of this, Defendant argues, "if Plaintiff prevails in

27  her goal to invalidate the 3(N) exemption, under AA's existing policy, the Agents' ability to

28  change shifts would be sharply curtailed."  (Opposition at 12:20-22.)  If Plaintiff prevailed, class

1   members would still be able to change shifts, but only so long as the change did not result in

2   overtime.  Defendant submits evidence from multiple putative class members stating that they

3   benefit financially from the current shift change policy or they enjoy the flexibility.  *See, e.g.*,

4   Arena Depo., 80:3-9; 81:12 - 82:2; Figuroa Decl. ¶ 10; Watkins Decl. ¶ 10; Sanzo-Davis Decl. ¶

5   11; Tiffany Decl. ¶ 8; Brown Depo., 133:15-18; Holland Decl. ¶ 11; Watkins Decl. ¶ 11; Brown

6   Depo., 132:9-133:5; Yammine Decl. ¶ 9.

7        A plaintiff is not an adequate representative if a "fundamental conflict" exists among a

8   class.  *Valley Drug Co. v. Geneva Pharmaceuticals, Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003).

9   "A conflict is 'fundamental' when it goes to the specific issues in controversy, or where, as here,

10  some plaintiffs claim to have been harmed by the same conduct that benefitted other members of

11  the class." *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156,

12  177 (C.D. Cal. 2007).  Further, "to this Court's knowledge, no circuit approves of class

13  certification where some class members derive a net economic benefit from the very same

14  conduct alleged to be wrongful by the named representatives of the class, let alone where some

15  named plaintiffs derive such a benefit." *Id.  See also Pickett v. Iowa Beef Processors*, 209 F.3d

16  1276, 1280 (11th Cir. 2000) (reversing certification of a class of cattle producers where the class

17  definition included producers who claimed to have been harmed by contracts and marketing

18  agreements that benefitted some of the unnamed members of the class).

19       Plaintiff contends that these arguments about conflict are speculative.  In particular,

20  Plaintiff argues that she simply wants Defendant to pay overtime for shift-trade hours, not to

21  forfeit the shift trade program altogether.  By opting out, Plaintiff argues, those who disagree

22  with her position could protect their individual rights.  And Plaintiff claims that the Court could

23  simply create subclasses to deal with any conflicts, though Plaintiff fails to explain how a

24  subclass would assist in this situation.

25       Defendant has correctly pointed out a conflict between Plaintiff and other class members.

26  Further, Plaintiff's position here is more nuanced than a typical overtime claim.  She is not

27  arguing that the putative class members were misclassified, for example.  Instead, she argues

28  that, even though Defendant is complying with the law as set forth in Section 3(N), it is Section

17

3(N) that is in violation of the labor laws.  For those putative class members who like the provisions of Section 3(N), believe them to be legal, and don't wish them changed, this position is in conflict with their interests.  Thus, Plaintiff is inadequate as to the overtime claim.  But this argument only applies to one of Plaintiff's claims, as not all of her claims turn on Section 3(N) and shift change provisions.

Defendant next argues that Plaintiff is merely a "stand-in" and is not sufficiently independent of counsel.  (Opposition to Motion for Class Certification at 16:9-10.)  But Plaintiff counters that the requirement is minimal, noting that "[t]he threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004).  Plaintiff argues that she satisfies this relatively low threshold of familiarity with the case.  The evidence submitted – in particular, excerpts from Plaintiff's deposition – supports Plaintiff's argument.  It is not necessary for a class plaintiff to understand the legal strategy of the case so long as she understand the basic underpinnings of her claims.  Here, the evidence demonstrates that Plaintiff meets this threshold.

Finally, Defendant argues that class counsel is inadequate.  But under the most recent revisions to the Federal Rules of Civil Procedure, this requirement – adequacy of class counsel – has been removed from Rule 23(a)(4) and given its own section, in Rule 23(g).  Accordingly, selection of class counsel is now a distinct determination and the certification of a class does not rise or fall on proposed counsel.  The Court will reserve ruling on this question of appointment of class counsel until the end of this Order.

### 3.3.5   Summary of Rule 23(a) Analysis

Plaintiff has satisfied most of the Rule 23(a) prerequisites.  But she ran into trouble concerning adequacy of representation for the overtime claim and the Court determined that she is an inadequate representative for that claim.  To the extent Plaintiff has complied with Rule

23(a), she must still demonstrate compliance with at least one section of Rule 23(b), so the Court turns now to that analysis.

### 3.4    Rule 23(b) Requirements

In her Motion, Plaintiff asserts that she seeks certification under Rule 23(b)(2) and Rule 23(b)(3).  But in her Reply, Plaintiff only addresses Rule 23(b)(3).  It is unclear whether Plaintiff has abandoned her Rule 23(b)(2) arguments in light of *Dukes*, which clarified the standard to be applied in such a case.  *Dukes*, 131 S.Ct. at 2557-61.  Regardless, the Court will first consider whether the class could be certified under Rule 23(b)(2).

Rule 23(b)(2) allows certification of a class if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  The *Dukes* Court determined that certification under Rule 23(b)(2) is not permissible when monetary claims predominate over the injunctive relief claims.  *Dukes*, 131 S.Ct. at 2559. Here, the monetary relief claims are key to this action and cannot reasonably be called incidental. Because Plaintiff's injunctive relief claims predominate over her monetary claims, certification under Rule 23(b)(2) is not appropriate, even assuming that Plaintiff still wishes to pursue this theory.

In addition, certification under Rule 23(b)(2) brings with it certain other concerns.  While Rule 23(b)(3) has procedural safeguards – notice to absent class members and an opportunity to opt-out, for example – Rule 23(b)(2) lacks these mechanisms.  When monetary rights are at stake, these procedural safeguards are important.  Further, "[t]he predominance test would also require the District Court to reevaluate the roster of class members continually . . . [because] those plaintiffs no longer employed by [defendant] lack standing to seek injunctive or declaratory relief against its employment practices."  *Dukes*, 131 S.Ct. at 2559-60.  This would be logistically difficult for both Plaintiff and the Court.  Although the Supreme Court left the

1    door open to Rule 23(b)(2) certification when monetary relief was truly incidental, this is not

2    such a case.  Thus, the Court DENIES certification under Rule 23(b)(2).

3        The Court now considers Rule 23(b)(3).  Under Rule 23(b)(3), Plaintiff must show both

4    that "questions of law or fact common to class members predominate over any questions

5    affecting only individual members" and also that "a class action is superior to other available

6    methods for fairly and efficiently adjudicating the controversy."  In denying the motion for class

7    certification in *Martin*, this Court found that common questions did not predominate over

8    individual questions and thus denied class certification under Rule 23(b)(3).  *Martin*, CV 07-

9    4812 AG (PJWx), Dkt. # 152.  The Court will review each claim asserted by Plaintiff to see if it

10   meets the test of Rule 23(b)(3).

11       Plaintiff's First Claim is for overtime violations.  The Court previously determined that

12   Plaintiff was not an adequate representative for this claim as to the shift trade portion, as there is

13   evidence of a fundamental conflict between Plaintiff's position and that of many class members.

14   Further, as to the bonus portion, individual inquiries predominate over common questions.

15   Defendant argues that it has paid overtime and premium wages beyond that required by law, and

16   it would be entitled to credit for those payments against any claim for underpayment.  Such a

17   tallying of credits and debits would be fact-intensive and specific to each individual's

18   employment history.  As in *Martin*, these considerations lead to the conclusion now that

19   common questions do not predominate for the First Claim.  Because of this, the Court need not

20   consider the second requirement of Rule 23(b)(3), regarding superiority.

21       Plaintiff's Second Claim is for failure to provide itemized wage statements under Labor

22   Code § 226.  Defendant argues that a claim under Section 226(e) requires a showing of injury

23   from the employer's failure to comply with Section 226(a).  Plaintiff has not set forth evidence

24   of injury.  It is also likely that, to the extent any putative class members were injured by

25   receiving electronic wage statements, this injury would vary in cause and scope from person to

26   person, thus necessitating individualized inquiries.  Plaintiff argues that she also seeks injunctive

27   relief under Section 226(g), which provides that "[a]n employee may also bring an action for

28   injunctive relief to ensure compliance with this section, and is entitled to an award of costs and

reasonable attorney's fees."  But while Plaintiff argues this now – perhaps to avoid Defendant's convincing argument about failure to demonstrate injury – the SAC makes no mention of Section 226(g) even though it specifically seeks remedies under Section 226(e) and (f).  Class certification is not a time for asserting new legal theories that were not pleaded in the complaint. The Court concludes that common questions do not predominate over individual inquiries regarding the Second Claim.  Because of this, the Court need not consider the second requirement of Rule 23(b)(3), regarding superiority.

Plaintiff's Third Claim is for violation of the California Unfair Competition Law.  This claim is derivative of the First and Second Claims, and the same arguments are fatal here.  Thus, the Court concludes that the Third Claim fails to satisfy Rule 23(b)(3).

### 3.5     Conclusion

Plaintiff has failed to establish the adequacy prerequisite under Rule 23(a)(4) as to her overtime claim, due to evidence of a conflict between herself and other putative class members. Further, Plaintiff has not sufficiently demonstrated that common questions predominate over individual inquiries, as required by Rule 23(b)(3).  Plaintiff is unable to certify a class under Rule 23(b)(2) and appears to have abandoned that argument after *Dukes*, 131 S.Ct. 2541 (2011). The Court DENIES the Motion for Class Certification.  Accordingly, the Court need not address appointment of class counsel under Rule 23(g).

## 4.     CONCLUSION

The Court DENIES the Motion for Judgment on the Pleadings.  The Court DENIES the Motion for Summary Adjudication.  The Court DENIES the Motion for Class Certification.

1    **DISPOSITION**

2

3         The Court DENIES the Motion for Judgment on the Pleadings.  The Court DENIES the

4    Motion for Summary Adjudication.  The Court DENIES the Motion for Class Certification.

5

6

7    IT IS SO ORDERED.

8    DATED: August 29, 2011

9                                                           _____

10                                                           Andrew J. Guilford
                                                            United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28